**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

-----------------------------------------------------------------x
TEDDY ARCHER, TREY BERNADOU,
SEDETRIC CHAMBLISS, ERVIN DESIR,
BRODRICK FRANCIS, JAMES HUTCHINSON,
DANIEL MANOFSKY, DEVON SPRINGER,
ERIC STEWART, JESSE SWANSON,
ANDREW WALLS, CALVIN WESLEY,
CHRIS WOODRUFF, on behalf of themselves and
all others similarly situated,                                        Civil Action No.: 1:18-cv-470-RGA

                                  Plaintiffs,

                    v.

DEFENDERS, INC.,

                                  Defendant.
-----------------------------------------------------------------x

<u>**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' MOTION**</u>
<u>**TO CONDITIONALLY CERTIFY A FLSA COLLECTIVE**</u>
<u>**ACTION AND SEND NOTICE TO THE CLASS**</u>

# TABLE OF CONTENTS

**I. INTRODUCTION**................................................................................................................... 1

**II. STATEMENT OF THE CASE**........................................................................................... 2

**III. A FLSA COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED AND NOTICE SENT TO THE CLASS**.................................................................................. 8

    A.   Numerous Plaintiffs Are Participating in this Action, and Numerous Other Employees Desire to Opt In............................................................................................................ 8

    B.   Plaintiffs' Collective Action Allegations Are Compensable Under the FLSA .................. 8

    C.   Legal Standards Governing FLSA Representative Actions................................................ 9

    D.   This Case Meets the Standard for Conditional Certification ........................................... 12

    E.   Plaintiffs Are Not Exempt From the FLSA .................................................................... 13

    F.   Notice Should Be Given For a Three-Year Period .......................................................... 14

    G.   Defendants Should Provide Information Necessary to Effectuate Notice......................... 15

    H.   Plaintiffs' Proposed Notice Should be Approved............................................................ 17

**IV. CONCLUSION**............................................................................................................... 17

# TABLE OF AUTHORITIES

**Cases**

*Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728 (1981) ............................................. 9

*Bishop v. AT&T*, 256 F.R.D. 503 (W.D. Pa. 2009)....................................................................... 11

*Chao v. Tradesmen Int'l, Inc*., 310 F.3d 904 (6th Cir. 2002)........................................................ 9

*Chung v. Wyndham Vacation Resorts, Inc.*, No. 3:14-CV-00490,
2014 U.S. Dist. LEXIS 126156.................................................................................................... 14

*Cunningham v. Freedom Ford Sales, Inc.*, No. 03:2006-205, 2007 U.S. Dist. LEXIS 60613..... 15

*Essex v. Children's Place, Inc.*, No. 15-5621, 2016 U.S. Dist. LEXIS 108853 .................... 14, 15

*Friscia v. Panera Bread Co.*, Civil Action No. 16-3754 (ES) (SCM),
2018 U.S. Dist. LEXIS 106446.................................................................................................... 13

*Genesis Healthcare v. Symczyk*, 569 U.S. 66 (2013)............................................................ 13, 15

*Gervasio v. Wawa Inc.*, Civil Action No. 17-cv-245 (PGS), 2018 U.S. Dist. LEXIS 4899......... 16

*Given v. Love's Travel Stops & Country Stores, Inc.*, No. 1:17-CV-1266
2018 U.S. Dist. LEXIS 25600...................................................................................................... 13

*Goldman v. RadioShack Corp.*, No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611 ..................... 14

*Goodman v. Burlington Coat Factory*, Civil Action No. 11-4395 (JHR),
2012 U.S. Dist. LEXIS 166910.................................................................................................... 13

*Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215 (3d Cir. 2016)........................ 10, 13, 15

*Herring v. Hewitt Assocs.*, No. 06-267 (GEB), 2007 U.S. Dist. LEXIS 53278 ........................... 15

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165 (1989)................................................ 9, 11, 15

*In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202,
2009 U.S. Dist. LEXIS 60790...................................................................................................... 16

*Mavrinac v. Emergency Med. Ass'n of Pittsburgh (EMAP)*, Civil Action No. 04-1880, 2007 U.S.
Dist. LEXIS 73526 ....................................................................................................................... 15

*McKee v. Petsmart, Inc.*, No. 12-1117-SLR, 2013 U.S. Dist. LEXIS 174123 ............................. 14

*McLaughlin v. Richland Shoe Co.*, 486 U.S. 128 (1988)............................................................. 14

*Misewicz v. City of Memphis*, 771 F.3d 332 (6th Cir. 2014) ........................................................ 8

*Morisky v. Pub. Serv. Elec. & Gas. Co.*, 111 F. Supp. 2d 493 (D.N.J. 2000) ............................. 11

*Moss v. Crawford & Co.*, 201 F.R.D. 398 (W.D. Pa. 2000).......................................................... 16

*Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60 (E.D. Pa. 2009)....................................................... 16

*Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 15-482,
2016 U.S. Dist. LEXIS 71494....................................................................................................... 14

*Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 n.7 (3d Cir. 2011) ............................ 12

*Tompkins v. Farmers Ins. Exch.* No. 5:14-cv-3737, 2015 U.S. Dist. LEXIS 108968 ................. 13

*Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527 (3d Cir. 2012).................................... 10, 11, 12, 13

**Statutes**

29 U.S.C. § 216(b) ............................................................................................................ 1

29 U.S.C. § 255(a) .......................................................................................................... 14

29 U.S.C. § 626(b) .......................................................................................................... 15

Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*........................... 15

**Regulations**

29 C.F.R. § 785.28 ........................................................................................................... 9

29 C.F.R. § 785.38 ........................................................................................................... 9

29 C.F.R. 516.4 .............................................................................................................. 16

## I. INTRODUCTION

Plaintiffs Teddy Archer, Trey Bernadou, Sedetric Chambliss, Brodrick Francis, James Hutchinson, Daniel Manofsky, Devon Springer, Eric Stewart, Andrew Walls, Calvin Wesley, and Chris Woodruff (collectively "Plaintiffs"), filed this action on behalf of themselves and other similarly situated current and former "Security Advisors" pursuant to 29 U.S.C. § 216(b).[1]  The Plaintiffs now move the Court to conditionally certify a Fair Labor Standards Act ("FLSA") collective action and order notice sent to members of a class of all current and former Security Advisors employed by Defenders who worked overtime hours but were not paid proper overtime wages.

Plaintiffs allege that Defenders failed to properly compensate Plaintiffs and the proposed class for the overtime work they performed during the relevant time period.  The allegations arise from work performed by Plaintiffs and the class in installing and servicing residential security systems, for which they were paid by Defenders under a piece rate system for each installation and service job completed.  However, in addition to their installation work, all Plaintiffs and the class were required to travel to Defenders' local branch offices to attend extensive mandatory meetings, frequently lasting several hours, and to spend many hours traveling to and from installation sites.  Defenders did not properly compensate Plaintiffs and the class for this work, however, in violation of the Fair Labor Standards Act ("FLSA") and Defenders' own stated policies by failing to pay proper overtime to account for these activities.  In particular:

- While Defenders tracked the time the Plaintiffs and the class spent traveling to and from job sites, Defenders neither counted these hours towards overtime, nor paid Plaintiffs and

---

[1] The claims of former Plaintiffs Erwin Desser and Jesse Swanson were dismissed due to binding arbitration agreements

1

the class for this time.  These failures both reduced the number of the hours for which overtime was paid and the total weekly pay on which the overtime rate was based; and

- While Defenders tracked the time the Plaintiffs and the class spent attending the mandatory meetings, and counted the hours towards any overtime paid, they did not pay Plaintiffs and the class for this time. This failure reduced the total weekly pay on which the overtime rate was based.

## II. STATEMENT OF THE CASE

### 1. Plaintiffs and the Proposed Class are Similarly Situated

#### a. Defenders Applies Uniform Policies to All Security Advisors

Defenders holds itself out as "a leader in the home security industry, providing safety and peace of mind to more than 1.5 million families nationwide."  See Ex. A to the Declaration of Stan Gutgarts in Support of Plaintiffs' Motion for Conditional Certification ("Gutgarts Decl.") ("Defenders Web Page").  The company has over 2,000 employees, with three central locations in Indianapolis, a sales center in Kentucky, and over 128 field branch offices throughout the country.[2]  *Id*.  They note that they are one of ADT's biggest partners and "the only partner to be designated as an Authorized Premier Provider."  *Id*.

Within each of their field branch offices, including the Defenders location at Dover, Delaware, Defenders employs Security Advisors (sometimes referred to by Defenders as "SAs") who are responsible for installing and servicing security systems for homeowners.  Certifications of the 11 Plaintiffs and 4 Opt-Ins in Support of Plaintiffs' Motion for Conditional Certification (collectively, "Plaintiffs' and Opt-ins' Certifications") at ¶ 3.  Defenders' standard employment

---

[2] Defenders does not deny that it meets the thresholds for "Enterprise Coverage" under the FLSA.  D.I. 25, ¶¶ 97-98.

documents confirm that Security Advisors are subject to uniform policies throughout the country.  Upon hiring, Security Advisors receive generic hiring letters welcoming them to the company—the "letter serves as a formal offer of employment … and outlines some general terms of your employment with Defenders." See Ex. B to Gutgarts Decl. ("SA Hiring Letter").  The terms of employment include a job description ("Job Description") outlining the primary responsibilities for all Security Advisors, including adherence "to all company policies and Standard Operating Procedures (SOPs)." *Id.*  The Job Description summarizes the installation work Security Advisors perform, noting, for example, that Security Advisors are to "arrive at all installs on time" and that "upon arriving at an install, perform the installation process that is documented on the tech web and trained in the training class."  *Id.*  The hiring letter further includes a detailed compensation structure applicable to all Security Advisors, and explains various benefits, including medical and 401(k) plans.  *Id.*  All Security Advisors are required to sign their offering letter, agreeing to be bound by "all current and future Defenders policies." *Id.*; Plaintiffs and Opt-in's Certifications at ¶ 4.

Defenders also provides for its employees a handbook which contains specific employment "policies and practices" applicable to all team members throughout the company. Ex. C to Gutgarts Decl. ("Defenders Handbook").  The Defenders Handbook provides 39 pages of generalized policies and guidelines which are intended by Defenders to apply, enterprise wide, to all their branch offices and employees represented in this action.  *Id.*  The policies cover matters ranging from compensation and benefits to accessing the company's centralized web portals.  *Id.*  For instance, the Defenders Handbook notes that "Team Members" are "paid on a weekly basis" and are "required to accurately record all hours worked."  *Id.* at 7-8.  All Security

Advisors are required to sign a Handbook Acknowledgment form stating that they agree to be bound by the terms of the Handbook.  *Id.* at 39; Plaintiffs and Opt-in's Certifications at ¶ 5.

Defenders further implements centralized training for all Security Advisors.  Plaintiffs and Opt-in's Certifications at ¶ 6.  In their pursuit "to grow and inspire leaders," Defenders notes that they "are intentional and focused in [their] onboarding and training of Security Advisors." Ex. D to Gutgarts Decl. ("SA Quick Start").  All newly hired Security Advisors are therefore required to undergo eight weeks of training called "Quick Start." Ex. E to Gutgarts Decl. ("Training Guide"); Plaintiffs and Opt-in's Certifications at ¶ 6.  The training protocol involves numerous online videos and courses administered by Defenders.  Exs. D and E; Plaintiffs and Opt-in's Certifications at ¶ 6.  As part of the training, all Security Advisors are required to travel to corporate headquarters in Indianapolis, Indiana to receive in-person instruction from Defenders.  Exs. C and D; Plaintiffs and Opt-in's Certifications at ¶ 6.  In Indianapolis, Security Advisors attend classroom sessions where Defenders instructors teach them, and dozens of other Security Advisors, how to install alarm systems and interact with customers.  Exs. C and D; Plaintiffs and Opt-in's Certifications at ¶ 6.  There, Security Advisors from different Defenders branches throughout the country learn side-by-side and receive the same training, instruction, and manuals.  Plaintiffs and Opt-in's Certifications at ¶ 6.

Once new hires pass their Quick Start training program and become full-fledged Security Advisors, their practices and procedures at jobsites are similarly regulated by Defenders down to the smallest detail.  Upon entering a customers' home, all Security Advisors are required to utilize a standard "11 Step in Home Process" (the "11 Steps"), which contains a detailed script to fulfill a customer's order and attempt to upsell certain additional features to them. Ex. D; Plaintiffs and Opt-in's Certifications at ¶ 10.  For instance, the 11 Steps direct Security Advisors

to install the central alarm system panel that the customer had initially purchased through a call center, and then, with the panel in place, to perform a risk assessment of the customer's home, noting vulnerable entry and exit points such as additional doors and windows. *Id.* Based on the risk assessment, Security Advisors are then directed to attempt to sell the customer on the merits of including additional features onto their current alarm system orders, such as purchasing sensors for additional doors. *Id.*

Security Advisors are required to log their hours pursuant to a standardized "Time Sheet Program," on Defenders-issued table computers, centrally administered by Defenders. Ex. F to Gutgarts Decl. ("SA Time Sheet Memo"); Plaintiffs and Opt-in's Certifications at ¶ 8. A memorandum explaining the Time Sheets Program details how all Security Advisor hours are to "be captured using ETA Direct (Tablet Activity)." *Id.* That is, all Security Advisors log their hours traveling to and from job sites, at meetings, and at installations using their Defenders tablets, and are expected by Defenders to "login to the new SA Time Sheet program daily to review their SA's hours." *Id.* Security Advisors access their Time Sheet Program through a centralized web interface (http://deftools.defenderdirect.com/) wherein they use their Defender user name and password to review their hours. *Id.*

Defenders frequently supplements its policies by issuing Standard Operating Procedure ("SOP") updates, which are sent to all Security Advisors. For example, an SOP titled "Slot Options" was sent to all Security Advisors, the purpose of which was "to outline the process for offering scheduling/slot options to Security Advisors." Ex. G to Gutgarts Decl. ("Slot Options SOP"). The Slot Options SOP explains, in part, that "all SA's must attend the Wednesday meeting" and that "all SA's must work two slots on Saturday." *Id.* at 3. Another SOP, captioned "Morning Huddle Attendance SOP," originally dated September 22, 2014 and updated April 25,

2017, was issued to "outline the process for Security Advisor morning huddle attendance." Ex. H to Gutgarts Decl. ("Morning Huddle SOP"). Similarly, an "Auto Technician Mileage (ATM) Reimbursement SOP," established a new set of guidelines for calculating mileage reimbursements for installation and service jobs performed by Security Advisors. Ex. I to Gutgarts Decl. ("Mileage SOP").

In March 21, 2018, a Field Services Compensation Structure (the "FSCS") memo was sent to all Security Advisors (except California), detailing the current compensation structure for Security Advisors. Ex. J to Gutgarts Decl. The FSCS began by noting that "all SAs are required to accurately report all hours worked," and continued with a five point compensation plan, detailing the elements that made up the weekly wages Security Advisors receive. *Id*. For instance, the FSCS noted a sliding scale compensation structure wherein Security Advisors received higher rates for installing the more advanced home security systems, which require more time to install. *Id*. at 2. The FSCS further noted that "SA's will receive at least minimum wage for all hours worked and applicable overtime in accordance with applicable law." *Id*. at 4. Accordingly, overtime is both contractually and FLSA mandated.

> **b. Plaintiffs and the Proposed Class Were Subjected to Identical Overtime Practices**

In addition to generalized hiring, training, and employment policies, Defenders also sets uniform wage and hour rules applicable to all Security Advisors, and which give rise to Plaintiffs' claims in this action.

Defenders compensates all Security Advisors on a weekly basis determined by the type of services and the number of installations they provide to customers; if Security Advisors sell additional equipment or services to customers in the process of their installation, Defenders also pays them commissions based on a percentage of the additional sale. Exs. B and J; Plaintiffs and

Opt-ins' Certifications at ¶¶ 14, 16.  Security Advisors also receive a mileage reimbursement for traveling between job sites as reimbursement for using their personal vehicles to travel.  Exs. B, I, J; Plaintiffs and Opt-ins' Certifications at ¶ 14.  This payment structure is uniform for all Security Advisors, and centrally administered by Defenders.  Exs. B, I, J; Plaintiffs and Opt-ins' Certifications at ¶ 14.

While Defenders has a policy and practice of tracking hours worked by Security Advisors and paying certain overtime to Security Advisors, Defenders fails to compensate Security Advisors properly for overtime.  Specifically:

1.  The time spent traveling from installation job site to job site is not included by Defenders in the computation of hours for which overtime is paid, despite being tracked.  Nor are Security Advisors paid for this time.  This practice reduces the number of hours for which overtime is paid (and, in certain weeks, whether there were sufficient hours in a given week to warrant overtime at all), and the total weekly pay on which the overtime rate is based; and

2.  The time spent attending mandatory meetings at local branch offices, including weekly meetings that last several hours, is included in the computation of hours for which overtime is paid but Security Advisors are not paid for this time.  This practice also reduces the total weekly pay on which the overtime rate is based.

Plaintiffs and Opt-ins' Certifications at ¶¶ 18-19.

The meetings and travel are extremely time consuming and amount to a significant portion of any given workweek.  For instance, the daily meetings, called "morning huddles," last between 15 and 30 minutes, while the weekly meeting lasts between one and four hours.  Plaintiffs and Opt-ins' Certifications at ¶ 12.  In addition, traveling between installation job sites,

while varying depending on a given customer's location, nonetheless involves a significant amount of time, usually many hours per week. *Id*. at ¶ 11. All these hours are tracked by Defenders pursuant to Defenders policy. Ex. F; Plaintiffs and Opt-ins' Certifications at ¶¶ 12-13.

## III. A FLSA COLLECTIVE ACTION SHOULD BE CONDITIONALLY CERTIFIED AND NOTICE SENT TO THE CLASS

### A. Numerous Plaintiffs Are Participating in this Action, and Numerous Other Employees Desire to Opt In

The Complaint in this action was filed on March 28, 2018. D.I. #1. As pleaded in the Complaint, Plaintiffs sought to bring this action for unpaid overtime on behalf of:

> All Security Advisors employed by Defendant who, at any time during the period beginning three years before the filing of this Complaint up to and including the date of final judgment in this matter, installed homeowner security/alarm systems and/or performed service on those systems for Defendant ("Collective Class").

Soon thereafter, additional current and former Security Advisors began contacting counsel for Plaintiffs seeking to assert claims for unpaid overtime during the relevant period. On May 24, 2018, Plaintiffs filed their Amended Complaint, which included an additional five Plaintiffs. D.I. #19. In total, Plaintiffs worked in Defenders branches in seven states: Delaware, Alabama, Texas, Mississippi, Tennessee, Georgia, and Florida.

Plaintiffs have further filed written consents from three additional Security Advisors—employed at Defenders branches in Kentucky, Mississippi, Tennessee, and Indianapolis—who wish to join this action once it is certified as a collective action (the "Opt-Ins").

### B. Plaintiffs' Collective Action Allegations Are Compensable Under the FLSA

Plaintiffs allege two separate overtime violations: unpaid meeting time and unpaid travel time from job site to job site, both of which are compensable under the FLSA. "Time spent attending employer-sponsored lectures, meetings, and training programs is generally considered

compensable," under the FLSA. *Misewicz v. City of Memphis*, 771 F.3d 332, 334 (6th Cir. 2014) (quoting *Chao v. Tradesmen Int'l, Inc.*, 310 F.3d 904, 907 (6th Cir. 2002)). The Department of Labor ("DOL") regulations implementing the FLSA further provide that meetings are not "voluntary" if an employee's "[a]ttendance . . . is . . . required by the employer. It is not voluntary in fact if the employee is given to understand or led to believe that his present working conditions or the continuance of his employment would be adversely affected by nonattendance." 29 C.F.R. § 785.28. As discussed *supra*, the meetings here were mandatory, and are described as such by Defenders: "All SA's must report to the branch on the weekly meeting day (currently Wednesday)." Ex. H; *see also* Plaintiffs and Opt-ins' Certifications at ¶ 12.

Travel time is similarly compensable under the FLSA: "Time spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the work day, must be counted as hours worked." 29 C.F.R. § 785.38. Here, Defenders tracked the hours between job sites, but neither compensated Security Advisors for them nor even counted them as hours worked, resulting in underpayment of overtime. Plaintiffs and Opt-ins' Certifications at ¶¶ 11, 18.

**C. Legal Standards Governing FLSA Representative Actions**

The purpose of the FLSA is to provide protection to employees in an effort to ensure that all workers covered by the act receive a "fair day's pay for a fair day's work." *Barrentine v. Arkansas-Best Freight Sys. Inc.*, 450 U.S. 728, 739 (1981). Through the FLSA, Congress intended to address the general well-being of workers by attacking long working hours. *Barrentine*, 450 U.S. at 739. Congress also recognized that allowing individual employees subject to the same illegal practices to bring claims collectively was both fair and efficient.

9

*Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989). The FLSA provides for one or more employees to pursue an action in a representative capacity for "other employees similarly situated." *Id.*; 29 U.S.C. § 216(b).

In a FLSA "collective action," an employee must affirmatively opt-in to a FLSA collective action by filing a written consent with the court. Thus, there are only two requirements to proceed as a representative action under 216(b): (1) all plaintiffs must be "similarly situated," and (2) a plaintiff must consent in writing to take part in the suit. The latter requirement means that a representative action follows an "opt-in" procedure – "mandating that each individual must file an affirmative consent to join the collective action." *Halle v. West Penn Allegheny Health Sys.*, 842 F.3d 215, 223-24 (3d Cir. 2016).

As no formal procedural rules mandating FLSA collective action certification exist, courts have developed a practical approach, which is recognized by the Supreme Court and is accepted in most jurisdictions. *Zavala v. Wal-Mart Stores Inc.*, 691 F.3d 527, 535 (3d Cir. 2012). The approach in the Third Circuit consists of two steps: conditional certification, and final certification. *Halle*, 842 F.3d at 223-24. Conditional certification requires the named plaintiffs to make a "modest factual showing… to demonstrate a factual nexus between the manner in which the employer's alleged policy affected him or her and the manner in which it affected the proposed collective action members." *Id*. At 224. "This stage is a preliminary inquiry into whether the plaintiff's proposed class is constituted of similarly situated employees." *Zavala v. Wal-Mart Stores Inc.*, No. 03-5309 (GEB), 2010 U.S. Dist. LEXIS 63530, at *5 (D.N.J. June 25, 2010).

At this juncture, there is only a threshold issue of whether the group is "similarly situated." *Zavala*, *691* F.3d at 534. While the FLSA does not define "similarly situated," courts

in this Circuit understand it to "require nothing more than substantial allegations that the putative

class members were together the victims of a single decision, policy, or plan[.]" *Id.* at 535 (citing

*Zavala*, 2010 U.S. Dist. LEXIS 63530, at *2 (D.N.J. June 25, 2010) (quoting *Morisky v. Pub.

Serv. Elec. & Gas. Co.*, 111 F. Supp. 2d 493, 495 (D.N.J. 2000))).  In this Circuit, factors

relevant in determining if a group is similarly situated include: "whether the plaintiffs are

employed in the same corporate department, division, and location; whether they advance similar

claims; whether they seek substantially the same form of relief; and whether they have similar

salaries and circumstances of employment." *Zavala*, 691 F.3d at 537.  The "similarly situated"

hurdle is an "extremely lenient standard" that simply requires the moving party to "demonstrate

some evidence, beyond mere speculation, that [the employer's] alleged policy affected other

employees" who were "similarly situated."  *Bishop v. AT&T*, 256 F.R.D. 503, 507 (W.D. Pa.

2009)(internal citation omitted).

     When employees are shown to be similarly situated, the district court has a managerial

responsibility to oversee the joinder of additional parties to assure that the task is accomplished

in an efficient way and has the discretion to facilitate notice to potential plaintiffs of their right to

opt-into the action.  *See Hoffmann-La Roche*, 493 U.S. at 172.  Notice should issue early in the

litigation to give class members the opportunity to join the action. *Id.* (urging early management

of the notice in §216(b) cases to ensure that parties are aware of the action and to avoid

multiplicity of duplicative suits).

     This two-step process with its relatively liberal first-stage standard for assessing the

question of whether class members are "similarly situated" arises because, unlike a Rule 23 class

action, statutes of limitation are not tolled for putative members of a FLSA class until they

affirmatively opt into the action.  Thus, it is critical that notice of the right to opt-in is issued

promptly after the filing of the case if there is a colorable basis for believing the members to be similarly situated. *Symczyk v. Genesis Healthcare Corp.*, 656 F.3d 189, 194 n.7 (3d Cir. 2011), *rev'd on other grounds,* 569 U.S. 66 (2013), (citing *Hoffmann-LaRoche*, 493 U.S. at 170); *Zavala*, 691 F.3d at 536.

### D.  This Case Meets the Standard for Conditional Certification

The Plaintiffs have met the first-stage burden of showing that the class of people employed in Security Advisor positions is similarly situated. The burden at this stage is lenient and the certifications and other documentations that the Plaintiffs offer are sufficient to meet it. The Plaintiffs allege that Defenders did not pay the Security Advisors correct overtime wages as a result of *neglecting* to include any pay for meetings and travel in the wage figures utilized for calculating overtime.  The Plaintiffs also allege that Defenders did not include travel time at all in the total hours worked, thereby reducing the number of hours for which overtime was paid (and, in certain weeks, whether overtime was warranted at all).  These allegations are identical for all Security Advisors, so each one is similarly situated.  In support of the allegations, the Plaintiffs offer their own testimony along with many company documents addressing the uniform nature of the Security Advisor position and their respective compensation: the Security Advisor job description; the Defenders handbook; the hiring letters; the Quick Start training program; the 11 Step Home Process; SOP's outlining various compensation and attendance requirements; the Time Sheets Program for uniformly recording time; and the FSCS offering a detailed compensation structure for how Security Advisors are paid.

The allegations in the Complaint, along with the supporting evidence, are sufficient to show that all Security Advisors were subject to a common employment and overtime pay policy. Accordingly, the putative class is similarly situated and should be conditionally certified for

purposes of notifying punitive class members of the opportunity to join the action. *Halle*, 842

F.3d at 224; *Zavala*, 691 F.3d at 536; *Genesis Healthcare v. Symczyk*, 569 U.S. 66 (2013).

### E.  Plaintiffs Are Not Exempt From the FLSA

Defenders has asserted a number of exemptions to the FLSA in their affirmative

defenses.  D.I. 25.  However, the evaluation of the merits of such arguments are properly

reserved for the second stage of the aforementioned two-step process. *See Given v. Love's Travel*

*Stops & Country Stores, Inc.*, No. 1:17-CV-1266, 2018 U.S. Dist. LEXIS 25600, at *3 n.2 (M.D.

Pa. Feb. 16, 2018) ("Defendant attempts to draw the court into a merits review by advancing

arguments as to the proper application of FLSA exemptions … Consideration of the merits of

plaintiffs' claims is reserved for the step-two inquiry."); *Friscia v. Panera Bread Co.*, No. 16-

3754 (ES) (SCM), 2018 U.S. Dist. LEXIS 106446, at *21 (D.N.J. June 26, 2018) ("Moreover,

the Court's role at this stage is not to evaluate the merits of Friscia's claim that Panera

misclassified assistant managers as 'exempt.'"); *Tompkins v. Farmers Ins. Exch.* No. 5:14-cv-

3737, 2015 U.S. Dist. LEXIS 108968, at *13 (E.D. Pa. Aug. 18, 2015) ("The remainder of

Defendant's arguments, including those concerning the exempt or non-exempt status of Plaintiffs

and the proposed members, concern the merits of the dispute, which the Court is not called on to

address at this juncture."); *Goodman v. Burlington Coat Factory*, No. 11-4395 (JHR), 2012 U.S.

Dist. LEXIS 166910, at *24-25 (D.N.J. Nov. 20, 2012) ("At this stage, the Court's role is not to

evaluate the merits of Plaintiffs' claim that Burlington misclassifies [assistant store managers] as

'exempt'; rather, the Court's role is to determine whether [Plaintiff] has made a modest factual

showing of the manner in which this allegedly unlawful policy affected him and the way it affected other Burlington [assistant store managers].").[3]

### F. Notice Should Be Given For a Three-Year Period

Since Plaintiffs have alleged willful FLSA violations, notice within a three-year period is appropriate.  The FLSA allows Plaintiffs to collect damages within a three-year statute of limitations for violations that are "willful."  29 U.S.C. § 255(a).  The Supreme Court has interpreted "willful" in the FLSA context to mean "that the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988).

Irrespective of any potential argument by Defenders to the contrary, the willfulness of their FLSA violations is a question of fact for the merits stage, and accordingly, Plaintiffs are entitled to serve notice on the full potential three-year time period.  *See Rocha v. Gateway Funding Diversified Mortg. Servs., L.P.*, No. 15-482, 2016 U.S. Dist. LEXIS 71494, at *31 n.6 (E.D. Pa. June 1, 2016) ("Whether [Defendant] acted willfully is an issue of fact that should be decided by the factfinder at trial and we decline to limit the potential size of the collective based on the limited record now before us.") (citing *Chung v. Wyndham Vacation Resorts, Inc.*, No. 3:14-CV-00490, 2014 U.S. Dist. LEXIS 126156, at *4 (M.D. Pa. Sept. 9, 2014) ("'Whether Defendant['s] violations of the FLSA were willful is an issue going to the merits of the case and not whether notice should be issued to potential claimants. Facts regarding willfulness must be

---

[3] *See also Essex v. Children's Place, Inc.*, No. 15-5621, 2016 U.S. Dist. LEXIS 108853, at *17-18 (D.N.J. Aug. 16, 2016) (same); *Goldman v. RadioShack Corp.*, No. 2:03-CV-0032, 2003 U.S. Dist. LEXIS 7611, at *24 (E.D. Pa. Apr. 16, 2003) (same); *cf. McKee v. Petsmart, Inc.*, No. 12-1117-SLR, 2013 U.S. Dist. LEXIS 174123, at *7-8 (D. Del. Dec. 9, 2013) (acknowledging that under limited circumstances where Plaintiffs offer sparse evidence of a factual nexus between their experiences and the proposed collective, conditional certification may not be appropriate, but granting certification in that case).

explored during discovery, and the [Defendant] may challenge the three-year statute of limitations at a later date.'") (alterations in original); *Mavrinac v. Emergency Med. Ass'n of Pittsburgh (EMAP)*, No. 04-1880, 2007 U.S. Dist. LEXIS 73526, at *9 (W.D. Pa. Oct. 2, 2007) ("Whether there has been a willful violation of the Fair Labor Standards Act . . . is a question of fact to be determined by the fact finder by examining the evidence at trial." (citing *Cunningham v. Freedom Ford Sales, Inc.*, No. 03:2006-205, 2007 U.S. Dist. LEXIS 60613, at *7 (W.D. Pa. Aug. 17, 2007))).

### G. Defendants Should Provide Information Necessary to Effectuate Notice

Court authorization of notice to the class in a FLSA collective action "serves the legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action," *Hoffmann-La Roche*, 493 U.S. at 172.[4] In *Hoffmann-La Roche*, the Supreme Court recognized that courts have the authority to require employers to provide the names and addresses of putative class members, and courts regularly require such production to facilitate notice. *See, e.g.*, *Halle*, 842 F.3d at 224; *Genesis*, 569 U.S. at 75.

The Plaintiffs ask the Court to order Defenders to provide Plaintiffs' counsel with the last known addresses, email address, dates of birth, and last four digits of social security numbers, of the class members in order to assist with the issuance of the notice. The dates of birth and partial social security numbers can assist with locating the correct address for those workers so that they receive notice. *See, e.g.*, *Essex*, 2016 U.S. Dist. LEXIS 108853 at *25; *Herring v. Hewitt Assocs.*, No. 06-267 (GEB), 2007 U.S. Dist. LEXIS 53278, at *24 (D.N.J. July 24, 2007).

---

[4] *Hoffmann-La Roche* involved a collective action brought under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, which incorporates the FLSA's collective action provision in 29 U.S.C. § 626(b). Courts have looked to *Hoffmann-La Roche* for guidance on interpretation of the FLSA, particularly since the Court's opinion contains an extended discussion of the FLSA collective action provision.

The Plaintiffs further request that the Court allow their counsel to send a follow-up notice to any class members who have not responded after the mailing of the initial notice. Such follow-up mailing contributes to dissemination among similarly situated employees and serves what the Supreme Court in *Hoffmann-La Roche v. Sperling* recognizes as section 261(b)'s "legitimate goal of avoiding a multiplicity of duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172.  Accordingly, courts have approved the sending of a follow-up notice to class members who have not responded after the mailing of the initial notice. *See Gervasio v. Wawa Inc.*, Civil Action No. 17-cv-245 (PGS), 2018 U.S. Dist. LEXIS 4899, at *18 (D.N.J. Jan. 10, 2018); *In re Janney Montgomery Scott LLC Fin. Consultant Litig.*, No. 06-3202, 2009 U.S. Dist. LEXIS 60790, at *7 (E.D. Pa. July 16, 2009).

The Plaintiffs also request that the Court order Defenders to post the notice at all of the Defenders' worksites in the same areas in which it is required to post FLSA notices. *See* 29 C.F.R. § 516.4 (requiring posting of FLSA requirements "in conspicuous places in every establishment where such employees are employed so as to permit them to observe readily a copy"). Posting of notice also contributes to dissemination among similarly situated employees and serves what the Supreme Court in *Hoffmann-La Roche v. Sperling* recognizes as section 216(b)'s "legitimate goal of avoiding duplicative suits and setting cutoff dates to expedite disposition of the action." 493 U.S. at 172. District Courts in this Circuit have recognized posting as an efficient, non-burdensome method of notice that courts regularly employ. *See Pereira v. Foot Locker, Inc.*, 261 F.R.D. 60, 68 (E.D. Pa. 2009); *Moss v. Crawford & Co.*, 201 F.R.D. 398, 400 (W.D. Pa. 2000).

### H.  Plaintiffs' Proposed Notice Should be Approved

A copy of the notice the Plaintiffs propose to post and send to class members is attached to the motion as Exhibit 1. This notice informs class members in neutral language of the nature of the action, of their right to participate in it by filing a consent to sue form with the Court, and the *consequences* of their joining or not joining the action. It is consistent with forms of notice that have been approved in this District.

## IV. CONCLUSION

For all the foregoing reasons, this Court should conditionally certify this action as a FLSA representative action on behalf of a class of all current and former Security Advisors employed by Defenders, who worked overtime hours but were not paid proper overtime wages, authorize Plaintiff's counsel to issue the notice that is attached to this motion and to send a follow-up notice to any class members who have not responded thirty days after the mailing and emailing of the initial notice, and require Defenders to post the attached notice of this lawsuit and consents to sue in a conspicuous location in the workplace. The Court should also order Defenders to provide Plaintiffs' counsel with the last known addresses and email address of all putative class members and the telephone number, date of birth, and last four digits of the social security number of any potential class members whose notice is returned by the post office, so that Plaintiffs' counsel may provide effective notice to the class.

Dated: August 23, 2018

OF COUNSEL:

**TRIEF & OLK**
Ted E. Trief
Shelly L. Friedland
Stan Gutgarts
150 E. 58th Street, 34th Floor

**RIGRODSKY & LONG, P.A.**

By:   */s/ Brian D. Long*
 Brian D. Long (#4347)
 300 Delaware Avenue
 Suite 1220
 Wilmington, DE 19801
 Telephone: (302) 295-5310
 Email: BDL@rl-legal.com

17

New York, NY 10155
Telephone: (212) 486-6060
Email: ttrief@triefandolk.com

**COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP**
Peter S. Pearlman
Park 80 Plaza West One,
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
Email: psp@njlawfirm.com

**THE LAW OFFICE OF MACY D.
HANSON, PLLC**
Macy D. Hanson
The Echelon Center
102 First Choice Drive
Madison, MS 39110
Telephone: (601) 853-9521
Email: macy@macyhanson.com