IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TEDDY ARCHER, et al.,

      *Plaintiffs*,

    v.

DEFENDERS, INC.,

      *Defendant*.

No. 18-cv-470-SB

---

Herbert W. Mondros, RIGRODSKY LAW P.A., Wilmington, Delaware; Eyal Dror, TRIEF & OLK, New York, New York.

      *Counsel for Plaintiffs*.

J. Cory Falgowski, BURR & FORMAN LLP, Wilmington, Delaware; Ronald W. Flowers, H. Carlton Hilson, BURR & FORMAN LLP, Birmingham, Alabama.

      *Counsel for Defendant*.

---

**MEMORANDUM OPINION**

July 19, 2021

BIBAS, *Circuit Judge*, sitting by designation.

Deadlines are not suggestions. Litigants must respect them. Here, a defendant failed to produce thousands of data points when requested. It now asks me to overlook its failure and extend the discovery deadlines yet again. But more time is not always the answer. Going forward, the defendant may not use these belated data.

## I. BACKGROUND

Defenders, Inc. hires employees to install home security systems. Some employees claimed that Defenders underpaid them and sued it under the Fair Labor Standards Act. 29 U.S.C. §207(a)(2); Second Am. Compl. ¶3, D.I. 125. Defenders insists that it did not have to pay overtime because these employees also sold many security systems and so fell within the Act's outside-sales exemption. 29 U.S.C. §213(a)(1); Answer at 24, D.I. 129. This Court (Andrews, J.) conditionally certified a class action. 29 U.S.C. §216(b); D.I. 53.

Defenders tracks its installations using DealMaker sales software. The employees sought "all account history data" stored in DealMaker. D.I. 251-1 ¶4. Defenders objected, claiming that it could not sort out the data. D.I. 251-2, at 5–6. Months later, it said that it had developed a "software tool" to export the data. D.I. 251-3, at 2. After another month's delay, it handed over all the data. D.I. 251-4. Or so the employees thought. Nearly a year later, Defenders produced a mountain of DealMaker data, filling 60,000 rows in several spreadsheets. D.I. 251, at 2; 251-5, at 1.

Because Defenders did not disclose some of these new data until just before the close of depositions and some of it after, the employees ask me to exclude them from this case. I will.

2

## II. DEFENDERS CANNOT USE THE BELATED SALES DATA

Defenders and the employees had to substantially finish document production by last December. *See* Fourth Am. Sched. Order, D.I. 216. But Defenders produced only some of the requested DealMaker data by then. Instead, it dropped 20,000 more data points on the employees two weeks before the close of depositions this May, and then another 10,000 followed by 30,000 in June. D.I. 251, at 2. If a party fails to produce information on time, I can exclude it. Fed. R. Civ. P. 37(b)(2)(A)(ii). Before doing so, I must consider five factors:

- Would letting the sales data in now disrupt the case?
- Did Defenders' delay hurt the employees?
- Did Defenders act in bad faith?
- Is there a reasonable way to cure the prejudice?
- How important are the sales data to Defenders?

*Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977), *overruled on other grounds by Goodman v. Lukens Steel Co.*, 777 F.2d 113, 120 (3d Cir. 1985). Because four factors strongly support exclusion and the last is neutral, I will exclude the data.

*1. Efficiency.* Pausing discovery to let in these data would disrupt "the orderly and efficient trial of the case." *Pennypack*, 559 F.2d at 904. This not-so-complicated case has been in discovery for three years and is on its seventh scheduling order. *See* D.I. 37. But the end is near: motions to decertify the class and for summary judgment are due in just a few months. D.I. 216 ¶¶ 4–5. Because the litigants and this Court have

a strong interest in reaching the merits speedily, I have twice told the parties to stick to the existing deadlines. Fifth Am. Sched. Order, D.I. 224 ¶ 4 ("I will grant no further extensions."); Sixth Am. Sched. Order, D.I. 249 ¶ 5 ("I will not look kindly on further requests for extension."). Defenders' tardiness should not delay the merits further.

   *2. Prejudice.* Defenders' delay hurt the employees. *Pennypack*, 559 F.2d at 904. Defenders said it had handed over all the DealMaker data. For a year, the employees reasonably "relied on th[at] representation[]," spending their expert resources accordingly. Oral Arg. Tr. 9, D.I. 254. Now, drowning in new data, the employees have no time to study them. *Cf. ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 228 (3d Cir. 2012) (finding no prejudice when a party would "not have to analyze any new data"). Indeed, the employees claim to have identified some serious discrepancies in the data. D.I. 251, at 2–3 & n.3. But expert reports are due soon, and the employees' expert has been busy dissecting other (timely) data.

   *3. Bad faith.* Though Defenders' delay was not willful, it was grossly negligent. *Pennypack*, 559 F.2d at 904–05. As Defenders admits, these new data fit squarely within the employees' discovery request. Oral Arg. Tr. 6. But, Defenders says, it "w[as] unaware this data was in DealMaker." *Id.* That is no excuse. Defenders had a duty to look long and hard for responsive data.

   Tellingly, Defenders easily found these data when it wanted to. In their depositions, the employees testified that they rarely sold products to customers. To undermine them, Defenders "[went] and s[ought] this data out." *Id.* at 17. Once it set its

4

mind to it, it took just a "couple [of] hours," to produce each spreadsheet. D.I. 251-9, at 5. But Defenders had to produce these data when requested, not when convenient.

*4. Other options.* Defenders has not proposed a viable solution to cure the prejudice, and I can think of none. *Pennypack*, 559 F.2d at 904. Perhaps recognizing that it had made a mistake, Defenders gave the employees three-and-a-half hours to depose a corporate witness about these data. But Defenders had not produced all the new data by the deposition. D.I. 251, at 2. Even if it had, it would have been unreasonable to ask the employees to "scrambl[e]" to work through it all at the "last[] minute." *Konstantopoulous v. Westvaco Corp.*, 112 F.3d 710, 721 (3d Cir. 1997). As an alternative solution, Defenders suggests extending the deadlines for expert discovery. But the employees and their expert would need significant time to comb through these "highly technical, voluminous data," which would require pushing back other deadlines. Oral Arg. Tr. 11. I am "unwilling to … alter the pre-trial schedule" for a seventh time. *In re TMI Litigation*, 193 F.3d 613, 721 (3d Cir. 1999).

*5. Importance of the evidence.* Defenders says the employees were outside salespeople and so did not need to be paid overtime. D.I. 252, at 3. The DealMaker data, it asserts, "provide[] statistical evidence supporting" that defense, so they are "really helpful." *Id.*; Oral Arg. Tr. 18. But Defenders does not claim that the sales data are "critical" or "necessary." *ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297 (3d Cir. 2012). Instead, Defenders admits that it has plenty of other "data that [it] could use" for this outside-sales defense. Oral Arg. Tr. 18; *see ZF Meritor*, 696 F.3d at 299.

Because Defenders can rely on other *timely* evidence, I will not make the employees bear the burden of Defenders' mistake. Thus, I will exercise my discretion and exclude the DealMaker data produced in May and June 2021. Defenders may still rely on the DealMaker data that it timely produced in June 2020.