## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TEDDY ARCHER, TREY BERNADOU, SEDETRIC CHAMBLISS, BRODRICK FRANCIS, JAMES HUTCHINSON, DANIEL MANOFSKY, DEVON SPRINGER, ERIC STEWART, ANDREW WALLS, CALVIN WESLEY, CHRIS WOODRUFF, on behalf of themselves and all others similarly situated, | ) ) ) ) ) ) ) ) | |
| | ) | Civil Action No.: 1:18-cv-00470-SB |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| DEFENDERS, INC., | ) | |
| | ) | |
| Defendant. | ) | |

## <u>JOINT MOTION FOR SETTLEMENT APPROVAL</u>

TRIEF & OLK

Ted E. Trief (Pro Hac Vice)
Shelly L. Friedland (Pro Hac Vice)
Eyal Dror (Pro Hac Vice)
750 3rd Avenue, Suite 2902
New York, NY 10017
Telephone: (212) 486-6060
Email: ttrief@triefandolk.com

THE LAW OFFICE OF
MACY D. HANSON, PLLC

Macy D. Hanson (Pro Hac Vice)
The Echelon Center
102 First Choice Drive
Madison, MS 39110
Telephone: (601) 853-9521
Email: macy@macyhanson.com

RIGRODSKY LAW, P.A.

Herbert W. Mondros
300 Delaware Avenue

BURR & FORMAN LLP

J. Cory Falgowski (No. 4546)
1201 N. Market Street, Suite 1407
Wilmington, DE  19801
Telephone: (302) 830-2312
Facsimile:  (302) 397-2566
Email:  jfalgowski@burr.com
     -and-
K. Bryance Metheny (Pro Hac Vice)
Ronald W. Flowers, Jr. (Pro Hac Vice)
H. Carlton Hilson (Pro Hac Vice)
420 N. 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
Email: bmetheny@burr.com
     rflowers@burr.com
     chilson@burr.com

COUNSEL FOR DEFENDANT

Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
hwm@rl-legal.com

COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP

Peter S. Pearlman (Pro Hac Vice)
Park 80 Plaza West One
250 Pehle Avenue
Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
Email: psp@njlawfirm.com

COUNSEL FOR PLAINTIFFS

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................1

II. FACTUAL AND PROCEDURAL BACKGROUND ...........................................2

    A.    The Parties and the Lawsuit ..................................................................2

    B.    Procedural History ................................................................................2

    C.    The Settlement .....................................................................................4

III. SUMMARY OF THE KEY SETTLEMENT TERMS..........................................4

    A.    The Collective Class .............................................................................4

    B.    Monetary Terms ...................................................................................5

    C.    Settlement Distribution .......................................................................5

    D.    Limited Release of Wage Claims .........................................................6

    E.    Publicity ...............................................................................................7

IV. LEGAL ARGUMENT..........................................................................................7

    A.    The Court Should Approve the Settlement ..........................................7

            1.    Standard for FLSA Settlement Approval....................................8

            2.    The Settlement is Fair, Reasonable, and Adequate...................10

            3.    The Settlement Does Not Frustrate the FLSA ...........................13

            4.    The Enhancements Should Be Approved as Fair and Reasonable ...........13

            5.    The Court Should Approve the Payment of Attorneys' Fees and Expenses as Just and Reasonable...............................................15

V. CONCLUSION ....................................................................................................17

## <u>TABLE OF CITATIONS</u>

**Page(s)**

**Cases**

*Alvarez v. BI Inc.*,
  2020 U.S. Dist. LEXIS 60656 (E.D. Pa. Apr. 6, 2020)......................................................... 15

*Alvarez v. BI Inc.*,
  2020 WL 1694294 (E.D. Pa. Apr. 6, 2020)......................................................................... 17

*Bellan v. Capital Blue Cross*,
  2022 WL 736441 (M.D. Pa. Mar. 10, 2022)......................................................................... 9

*Bettger v. Crossmark, Inc.*,
  2015 WL 279754 (M.D. Pa. Jan. 22, 2015).......................................................................... 9

*Briggs v. PNC Financial Services Group, Inc.*,
  2016 WL 7018566 (N.D. Ill. Nov. 29, 2016)........................................................................ 8

*Brown v. TrueBlue, Inc.*,
  2013 WL 5408575 (M.D. Pa. Sept. 25, 2013)....................................................................... 8

*Carr v. Bob Evans Farms, Inc.*,
  2018 WL 7508650 (N.D. Ohio July 27, 2018)....................................................................... 8

*Castagna v. Madison Square Garden, L.P.*,
  2011 WL 2208614 (E.D.N.Y. June 12, 2013)....................................................................... 13

*Craig v. Rite Aid Corp.*,
  2013 WL 84928 (M.D. Pa. Jan. 7, 2013)............................................................................ 12

*Cruz v. JMC Holdings, Ltd.*,
  2019 WL 4745284 (D.N.J. Sept. 30, 2019).......................................................................... 13

*Deitz v. Budget Renovations and Roofing, Inc.*,
  2013 WL 2338496 (M.D. Pa. May 29, 2013)....................................................................... 10

*Fein v. Ditech Fin., LLC*,
  2017 WL 4284116 (E.D. Pa. Sept. 27, 2017)....................................................................... 15

*Gallant v. Arrow Consultation Services, Inc.*,
  2020 WL 2113399 (S.D. Ind. May 4, 2020).......................................................................... 7

*Gelis v. BMW of N. Am., LLC*,
  2022 WL 4113673 (3d Cir. Sept. 9, 2022) .................................................................... 16, 17

*Girsh v. Jepson*,
  521 F.2d 153 (3d Cir. 1975) ........................................................................................... 9

*Halle v. W. Penn Allegheny Health Sys. Inc.*,
  842 F.3d 215 (3d Cir. 2016) ........................................................................................... 8

*In re Cendant Corp. Sec. Litig.*,
  109 F. Supp. 2d 235 (D.N.J. 2000)................................................................................... 12

*In re Chickie's & Pete's Wage & Hour Litig.*,
  2014 WL 911718 (E.D. Pa. Mar. 7, 2014) ............................................................... 9, 13, 14

*In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
  55 F.3d 768 (3d Cir. 1996) ........................................................................................... 16

*In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*,
  148 F.3d 283 (3d Cir. 1998) ..................................................................................... 11, 12

*In re Safety Components, Inc. Sec. Litig.*,
  166 F. Supp. 2d 72 (D.N.J. 2001)................................................................................... 17

*In re Sch. Asbestos Litig.*,
   921 F.2d 1330 (3d Cir. 1990) ................................................................... 7
*Kapolka v. Anchor Drilling Fluids USA, LLC*,
   2019 WL 5394751 (W.D. Pa. Oct. 22, 2019) ....................................... 10, 12, 14, 15
*Karali v. Branch Banking & Trust Co.*,
   2020 WL 7227204 (D.N.J. Feb. 3, 2020) ..................................................... 16, 17
*Keller v. TD Bank, N.A.*,
   2014 WL 5591033 (E.D. Penn. Nov. 4, 2014) ...................................................... 17
*Knox v. Grp*,
   2017 WL 3834929 (S.D. Ind. Aug. 31, 2017) ......................................................... 7
*Kutz v. Cargill Cocoa & Chocolate, Inc.*,
   2019 WL 5457776 (M.D. Penn. Oct. 23, 2019) ................................................... 13
*Lachance v. Harrington*,
   965 F. Supp. 630 (E.D. Pa. 1997) .......................................................................... 7
*Loughner v. Univ. of Pittsburgh*,
   260 F.3d 173 (3d Cir. 2001) ................................................................................ 16
*Lyle v. Food Lion, Inc.*,
   954 F.2d 984 (4th Cir. 1992) ............................................................................... 16
*Lynn's Food Stores, Inc. v. United States*,
   679 F.2d 1350 (11th Cir. 1982) .......................................................................... 8, 9
*Mejia v. KVK-Tech, Inc.*,
   2020 WL 5292074 (E.D. Pa. Sept. 4, 2020) ....................................................... 14
*Moore v. Comcast Corp.*,
   2011 WL 238821 (E.D. Pa. Jan. 24, 2011) ......................................................... 14
*Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*,
   221 F.R.D. 523 (C.D. Cal. 2004) ....................................................................... 12
*O'Connor v. Oakhurst Dairy*,
   2015 WL 2452678 (D. Me. May 22, 2015) ........................................................... 8
*Ogunlana v. Atlantic Diagnostic Laboratories LLC*,
   2020 WL 1531846 (E.D. Penn. March 31, 2020) ............................................... 14
*Rossini v. PNC Fin. Servs. Grp., Inc.*,
   2020 WL 3481458 (W.D. Pa. June 26, 2020) ................................................ 11, 12
*Silva v. Miller*,
   307 F. App'x 349 (11th Cir. 2009) ..................................................................... 16
*Singleton v. Domino's Pizza, LLC*,
   976 F. Supp. 2d 665 (D. Md. 2013) .................................................................... 15
*Souryavong v. Lackwawanna Cty.*,
   872 F.3d 122 (3d Cir. 2017) ................................................................................ 16
*Spellman v. Am. Eagle Exp., Inc.*,
   2011 WL 4102301 (E.D. Pa. May 18, 2011) ........................................................ 8
*Stickel v. SMP Svcs, LLC*,
   2016 WL 827126 (M.D. Pa. Mar. 1, 2016) ........................................................ 16
*Sullivan v. DB Investments, Inc.*,
   667 F.3d 273 (3d Cir. 2011) .......................................................................... 11, 14
*Tumpa v. IOC-PA, LLC*,
   2021 WL 62144 (W.D. Pa. Jan. 7, 2011) ........................................................ 9, 11

*Waltz v. Aveda Trans. And Energy Svcs, Inc.*,
  2017 WL 2907217 (M.D. Pa. Jul. 7, 2017) ............................................................................ 17
*Williams v. First Nat'l Bank*,
  216 U.S. 582 (1910) ........................................................................................................... 7

## Statutes

29 U.S.C. § 216(b) ................................................................................................................. 15

## Rules

Fed. R. Civ. P. 23 ........................................................................................................... Passim
Fed. R. Evid. 702 ................................................................................................................... 4

Plaintiffs Teddy Archer, Trey Bernadou, Sedetric Chambliss, Brodrick Francis, James Hutchinson, Daniel Manofsky, Andrew Walls, Chris Woodruff, Devon Springer, Eric Stewart, Calvin Wesley, Delric Canaday, Brett Casden, Andrew Ascanio, Christopher Hackett, John Rocco, Neill Cromartie, and Steven Beierschmitt (the "Named Plaintiffs"), individually and on behalf of the opt-in collective members ("Collective Members") (together with the Named Plaintiffs the "Plaintiffs"), and Defendant Defenders, Inc. ("Defendant" or "Defenders") file this Joint Motion for Settlement Approval and request that the Court approve the Parties' Settlement Agreement and Release of Claims (the "Settlement Agreement")[1] and dismiss this action with prejudice.

## I. INTRODUCTION

The Settlement Agreement encompasses the claims of a collective class consisting of 557 former Defenders' Security Advisors ("SAs") who worked out of Defenders' branch office locations nationwide during the relevant time period. The Parties have agreed, subject to Court approval, to resolve this wage and hour matter for significant monetary relief. The settlement satisfies the criteria for approval of a Fair Labor Standards Act ("FLSA") collective action settlement because it was reached after significant discovery and contested litigation and was the result of arm's length negotiations led by experienced counsel well versed in wage and hour law. Accordingly, the parties request that the Court: (1) approve as fair, adequate and reasonable the settlement set forth in the Settlement Agreement, including the method for distribution(s) to Plaintiffs, the payment of Enhancements to particular plaintiffs for their participation and service in the litigation, and Plaintiffs' Counsel's request for attorneys' fees and costs; and (2) dismiss the lawsuit with prejudice.

---

[1] The fully executed Settlement Agreement is attached as Exhibit ("Ex.") 1 to the accompanying Declaration of Ted Trief ("Trief Decl.").

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A.      The Parties and the Lawsuit

Defenders was a dealer of security systems that sold and installed security equipment and monitoring services in commercial buildings and residential homes.[2]  Plaintiffs are former SAs for Defenders that worked out of Defenders' branch offices around the country.

Plaintiffs claim they were denied overtime pay under the FLSA for work performed over 40 hours in a workweek.  Specifically, Plaintiffs contend Defenders' various timekeeping systems during the relevant period did not capture all of their time worked each workweek, which resulted in a failure to pay proper overtime compensation to Plaintiffs.  Plaintiffs also bring a related breach of contract claim and state law claims under the wage and hour statutes in California, New York, New Jersey, and Washington.  Defenders contends Plaintiffs were exempt from the overtime provisions of the FLSA and applicable state law.  In addition, Defenders contends this action is not appropriate for collective or class treatment because resolving each Plaintiff's claims will require individualized inquiries.  Defenders further contends it did not have contracts with Plaintiffs, did not breach any contracts with Plaintiffs, and did not otherwise violate any federal or state law.

### B.      Procedural History

The lawsuit was filed on March 28, 2018.[3]  On November 14, 2018, the Court conditionally certified this action as an FLSA collective action.[4]  Following the Court's conditional certification

---

[2] Defenders was acquired by ADT, Inc. during the pendency of this litigation.  D.I. 133.

[3] D.I. 1.

[4] D.I. 53, p. 3.

49025746 v1

Order and notice to the class, approximately 570 SAs submitted consents to join this action as opt-in plaintiffs.

The parties engaged in substantial class discovery, which commenced on or about May 17, 2019.  Through a joint submission on April 24, 2019, the parties designated certain opt-in plaintiffs as "Discovery Plaintiffs" on whom discovery could be conducted.[5]  Defenders produced more than 300,000 documents, millions of text messages, and voluminous spreadsheets, videos, and other data.  Counsel for Plaintiffs and Defenders spent an enormous amount of time reviewing and analyzing the documents and data produced by Defenders.  54 Plaintiffs responded to Defenders' written discovery requests.  Plaintiffs conducted 15 depositions of Defenders witnesses and deposed Defenders' two expert witnesses.  Defenders deposed 21 Discovery Plaintiffs.  Plaintiffs and Defenders produced initial and rebuttal expert witness reports.  *See* Trief Decl., ¶¶ 10-11, 13-14.

Through the course of discovery, certain Discovery Plaintiffs were dismissed for failure to respond to discovery and/or nonresponsiveness.[6]  Other Plaintiffs were dismissed because their FLSA claims were barred by the statute of limitations.[7]  557 Plaintiffs remain in the collective class at this time.  Trief Decl., ¶ 7.

On November 15, 2021, Defenders filed a Motion to Decertify Collective Action and Dismiss Opt-In Plaintiffs' Claims,[8] which sought decertification of the conditionally certified

---

[5] D.I. 82-83.

[6] *See* D.I. 114, 122, 196, 211, 232.

[7] D.I. 265-266.

[8] D.I. 272.

49025746 v1

collective class.  In addition, on November 15, 2021, Plaintiffs filed a Motion to Certify Class and Subclasses Pursuant to Fed. R. Civ. P. 23, which sought certification of a national breach of contract class and state law subclasses under Rule 23.[9]  On February 9, 2022, the parties filed motions to exclude expert witness testimony and reports under Fed. R. Evid. 702 and *Daubert*.[10]

**C.**     **The Settlement**

In February 2022—after the Defenders' Motion to Decertify Collective Action and Dismiss Opt-In Plaintiffs' Claims and Plaintiffs' Motion to Certify Class and Subclasses Pursuant to Fed. R. Civ. P. 23 were fully briefed—the parties engaged in settlement discussions and negotiations. Trief Decl., ¶ 27.  On May 27, 2022, the parties notified the Court that they had reached a settlement and the pending motions were moot.[11]  The parties continued to discuss and negotiate settlement terms throughout June-August 2022.  In September 2022, the Settlement Agreement was signed by all parties.

**III. SUMMARY OF THE KEY SETTLEMENT TERMS**

The key terms of the settlement are set forth below.  A complete description of the terms and conditions of the settlement are set forth in the Settlement Agreement.

**A.**     **The Collective Class**

The individuals eligible to participate in the settlement include the 557 Plaintiffs who remain in the lawsuit, including the 18 Named Plaintiffs and 539 opt-in Collective Members.[12]

---

[9] D.I. 292.

[10] *See* D.I. 322, 325.

[11] D.I. 333.

[12] *See* Ex. 1 (Settlement Agreement), at p. 3.

49025746 v1

B.     <u>**Monetary Terms**</u>

Pursuant to paragraph 5 of the Settlement Agreement, the settlement is structured as follows:

a.     One Million Six Hundred Thousand Dollars ($1,600,000.00) will be paid to Plaintiffs as backpay and liquidated damages (the "FLSA Collective Member Fund"). The FLSA Collective Member Fund is further divided as follows:

(1) One Million Five Hundred Four Thousand Dollars ($1,504,000.00) will be shared among the 557 Plaintiffs, as detailed in Exhibit A to the Settlement Agreement. Specifically, each Plaintiff will be allocated settlement shares based on the number of weeks employed by Defenders as an SA during the relevant period. Plaintiffs will be allocated additional settlement shares depending on whether they worked as an SA in particular states to account for their state law wage and hour claims.

(2) Ninety-Six Thousand Dollars ($96,000.00) in Enhancements will be shared by a group of specifically identified plaintiffs for their participation and service in the litigation. The Enhancements include a $4,000.00 payment to each of the Named Plaintiffs, a $250.00 payment to each of the 54 Plaintiffs designated to participate in discovery, and a $500.00 payment to each of the 21 Plaintiffs who was deposed.

b.     Three Million Four Hundred Thousand Dollars ($3,400,000.00) will be paid to Plaintiffs' Counsel for attorneys' fees, costs, and expenses.

c.     In total, the gross settlement amount is Five Million Dollars ($5,000,000.00).

C.     <u>**Settlement Distribution**</u>

JND Legal Administration will serve as the Settlement Administrator. Within 15 business

49025746 v1

days of the Court's Order granting this Motion, Defenders will deliver payment of the FLSA Collective Member Fund and information regarding the Plaintiffs and the amount of each Plaintiff's settlement payment to the Settlement Administrator.  Within 15 business days of receipt of the settlement funds, the Settlement Administrator will mail the Plaintiffs' settlement checks to Plaintiffs' Counsel's office for distribution to Plaintiffs.  Plaintiffs' Counsel is responsible for distributing the settlement checks to Plaintiffs.  The gross settlement amount does not include payment to the Settlement Administrator for the initial settlement distribution to Plaintiffs, which will be paid by Defenders directly to the Settlement Administrator.[13]

Pursuant to paragraph 3.g. of the Settlement Agreement, the Settlement Administrator will cancel payment of any settlement checks that are not redeemed within 180 days of issuance.  If the funds from all cancelled checks do not exceed the costs of a second distribution, the remaining funds will returned to Defenders by the Settlement Administrator.[14]  However, if the funds from the cancelled checks exceed the not-to-exceed price for a second distribution provided by the Settlement Administrator, the remaining funds will be aggregated and redistributed to the Plaintiffs who timely negotiated their settlement checks in the initial distribution, with the costs of the second distribution paid to the Settlement Administrator out of the remaining settlement fund.

### D.      Limited Release of Wage Claims

The Settlement Agreement does not include a general waiver and release of claims.  As set forth in paragraph 4 of the Settlement Agreement, upon approval of Settlement, Plaintiffs will waive and release every known or unknown claim, action, lawsuit or cause of action, asserted or

---

[13] *See* Ex. 1 (Settlement Agreement), at ¶3.d.-e.

[14] As set forth in paragraph 3.d. of the Settlement Agreement, the Settlement Administrator provided estimates for the initial and second distributions, including not-to-exceed prices.

49025746 v1

unasserted, that Plaintiffs may have against Defenders relating in any respect to any wage and hour type of claim alleged in the lawsuit or that could have been alleged in the lawsuit, including any FLSA claims, claims for breach of contract, and wage and hour claims under state law.

### E.    Publicity

The Settlement Agreement does not include a traditional confidentiality clause.  Rather, paragraph 8 of the Settlement Agreement (1) requires Plaintiffs' Counsel to direct the media to the Court's docket in response to any requests for comment regarding the lawsuit or the Settlement Agreement from the media, and (2) restricts Plaintiffs' Counsel from contacting the media regarding the lawsuit or the Settlement Agreement, directing media requests to Plaintiffs, and making certain references on Plaintiffs' Counsel's websites.

## IV. LEGAL ARGUMENT

### A.    The Court Should Approve the Settlement

The settlement of class action litigation is favored and encouraged in the Third Circuit. *Lachance v. Harrington*, 965 F. Supp. 630, 638 (E.D. Pa. 1997) (citing *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910)); *In re Sch. Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1990) (the court "encourage[s] settlement of complex litigation 'that otherwise could linger for years'"). Unlike class action settlements under Fed. R. Civ. P. 23, courts have held that a "one-step settlement approval process is appropriate in FLSA Collective Actions." *Gallant v. Arrow Consultation Services, Inc*., 2020 WL 2113399, at *2 (S.D. Ind. May 4, 2020) (*citing Knox v. Grp*, 2017 WL 3834929, at *2 (S.D. Ind. Aug. 31, 2017)); *Carr v. Bob Evans Farms, Inc.*, 2018 WL 7508650, at *2 (N.D. Ohio July 27, 2018) ("To approve an FLSA collective action settlement, a district court need only engage in a one-step process."); *Briggs v. PNC Financial Services Group, Inc*., 2016 WL 7018566, at *1 (N.D. Ill. Nov. 29, 2016) (same).  This is because collective actions under Section 216(b) of the FLSA do not implicate the same due process concerns as Rule 23 class

actions. *See O'Connor v. Oakhurst Dairy*, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."); *Carr*, 2018 WL 7508650, at *2 ("Because failure to opt in does not bar potential collective action members from bringing their own suits, FLSA collective actions do not implicate the same due process concerns as class actions under Federal Rule of Civil Procedure 23.").

"In contrast to class actions brought pursuant to Fed. R. Civ. P. 23, the FLSA requires collective action members to affirmatively opt in to the case." *Spellman v. Am. Eagle Exp., Inc.*, 2011 WL 4102301, at *1 n.1 (E.D. Pa. May 18, 2011). Where, as here, individuals are not part of the settlement unless they affirmatively opted in as plaintiffs, there is no need to require that the settlement provide for opt-outs or objections. *See Halle v. W. Penn Allegheny Health Sys. Inc.*, 842 F.3d 215, 225 (3d Cir. 2016) (the "'opt-in' requirement . . . is the most conspicuous difference between the FLSA collective action device" and a Rule 23 class action); *see also Brown v. TrueBlue, Inc.*, 2013 WL 5408575, at *1 (M.D. Pa. Sept. 25, 2013) ("Once employees present a proposed settlement agreement to the district court pursuant to Section 216(b), the Court may enter a stipulated judgment if it determines that the compromise 'is a fair and reasonable resolution of a bona fide dispute over FLSA provisions.'") (citation omitted)).

### 1.     Standard for FLSA Settlement Approval

Third Circuit courts review FLSA settlements pursuant to the standards outlined in *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). *See In re Chickie's & Pete's Wage & Hour Litig.*, 2014 WL 911718, at *2 (E.D. Pa. Mar. 7, 2014). A settlement "resolves a bona fide dispute when it 'reflect[s] a reasonable compromise over issues, such as FLSA coverage or computation of back wages, that are actually in dispute.'" *Id.* at *2 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1354). "An agreement resolves a bona fide dispute when there is some doubt as to whether the plaintiff would succeed on the merits at trial." *Bettger v.*

*Crossmark, Inc.*, 2015 WL 279754, at *4 (M.D. Pa. Jan. 22, 2015).  If the proposed settlement reflects a reasonable compromise over contested issues, the Court should approve the settlement. *Lynn's Food Stores, Inc.*, 679 F.2d at 1354.

If a court determines that the parties are indeed settling a *bona fide* dispute, the Court conducts a "two-part fairness inquiry to ensure that (1) the settlement is fair and reasonable for the employees, and (2) the settlement furthers the FLSA's implementation in the workplace." *Tumpa v. IOC-PA, LLC*, 2021 WL 62144, at *5 (W.D. Pa. Jan. 7, 2011).  To determine whether an FLSA settlement is fair and reasonable, district courts within the Third Circuit have utilized the same factors applied to Rule 23 class action settlements.  Those factors include:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the [collective] action through the trial; (7) the ability of the defendant[] to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-57 (3d Cir. 1975) (ellipses and citations omitted) (the "*Girsh* factors").  At the same time, district courts in the Third Circuit have also noted that the *Girsh* factors need not be strictly applied in the context of collective action settlements.  *See Bellan v. Capital Blue Cross*, 2022 WL 736441, at *4 (M.D. Pa. Mar. 10, 2022) ("While the *Girsh* factors are a helpful framework, their 'rigid application' is not necessary in the FLSA collective action context."); *Kapolka v. Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at *3 (W.D. Pa. Oct. 22, 2019) (same).  As discussed below, the settlement should be approved because it resolves a bona fide dispute, represents a fair and reasonable resolution of that dispute consistent with the *Girsh* factors, and does not frustrate the goals of the FLSA.

### 2.     The Settlement is Fair, Reasonable, and Adequate

Application of the *Girsh* factors demonstrates the settlement is fair and reasonable.  First, the complexity of the case and the likely continued duration of the litigation supports settlement approval.  Specifically, absent settlement, the parties would continue litigating nearly every aspect of Plaintiffs' claims, including, but not limited to, (1) whether the collective class is similarly situated and whether it should be decertified, (2) whether Plaintiffs' Rule 23 motion should be granted and a national class and/or subclasses created, (3) whether Plaintiffs qualified for overtime exemptions, (4) whether or to what extent Plaintiffs performed work off-the-clock for which they were denied overtime pay, (5) whether Plaintiffs had a contract with Defenders and whether Defenders breached any contract, (6) whether the alleged unpaid work tasks were compensable, (7) the likelihood of success on the merits, and (8) the proper damages calculations.  Thus, absent settlement, this matter has the potential to continue proceeding for years as the parties and Court work through complex class issues, legal questions, and determinations of fact.

Second, the stage of proceedings and amount of discovery completed weighs in favor of approval.  As set forth above, the parties have completed discovery – which involved voluminous exchanges of documents and numerous depositions – and, therefore, "the parties had an adequate appreciation of the merits of the case before negotiating" a resolution of the claims. *Deitz v. Budget Renovations and Roofing, Inc*., 2013 WL 2338496, at *6 (M.D. Pa. May 29, 2013) (*quoting In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 319 (3d Cir. 1998)). Settlements negotiated after discovery are more likely to reflect the true value of the claims. *Rossini v. PNC Fin. Servs. Grp., Inc.*, 2020 WL 3481458, at *15 (W.D. Pa. June 26, 2020).

Third, settlement is appropriate because a trial on the merits would involve significant risks to Plaintiffs as to liability and damages.  Defenders denies Plaintiffs' claims that they worked off-the-clock and are due overtime compensation and argues Plaintiffs are exempt from the FLSA

10

under the Section 7(i) retail and service establishment and outside sales exemptions.  If the Court or a jury finds either exemption is applicable, Plaintiffs' FLSA claims will fail as a matter of law and they will recover nothing.  Likewise, if the Court were to determine that Plaintiffs are entitled only to half-time damages for their overtime claims, as opposed to time-and-a-half, Plaintiffs damages would be severely curtailed.  Trief Decl., ¶ 45.

Fourth, there is a risk that Plaintiffs would not succeed in maintaining the conditionally certified collective.  Where final certification has not yet occurred, this factor "tips in favor of approving the settlement."  *Tumpa*, 2021 WL 62144, at *9.  Here, Defenders moved for decertification of the collective class in November 2021 and argued that Plaintiffs are not similarly situated due to various alleged differences among class members.  Plaintiffs disagree, but there is a risk of decertification should this litigation continue.

Fifth, the FLSA Collective Member Fund represents a substantial recovery and is reasonable, especially in light of Plaintiffs' litigation risks.  "The reasonableness of a proposed settlement is assessed by comparing 'the present value of the damages plaintiffs would likely recover if successful [at trial], appropriately discounted for the risk of not prevailing . . . with the amount of the proposed settlement.'" *Sullivan v. DB Investments, Inc.*, 667 F.3d 273, 323–24 (3d Cir. 2011) (quoting *In re Prudential*, 148 F.3d at 322). The fact that a settlement represents an amount short of the best possible recovery for Plaintiffs does not render it unreasonable or inadequate. *See In re Cendant Corp. Sec. Litig.*, 109 F. Supp. 2d 235, 263 (D.N.J. 2000); *Nat'l Rural Telecomm's Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 527 (C.D. Cal. 2004) ("[I]t is well-settled law that a proposed settlement may be acceptable even though it amounts to only a fraction of the potential recovery that might be available to the class members at trial."). "[W]here calculating the best possible recovery for the plaintiffs is exceedingly speculative, the

11

49025746 v1

reasonableness of the settlement can be fairly judged by looking at the nature of the settlement itself and taking into consideration the risks of litigation." *Rossini*, 2020 WL 3481458 at *16 (citing *Kapolka*, 2019 WL 5394751, at *6).  Here, the Settlement Agreement provides for a $1,600,000 recovery.  Based on the calculation of Plaintiffs' Counsel, this represents a recovery of roughly all of the unliquidated backpay damages that Plaintiffs could reasonably except to achieve at trial if they prevailed on <u>all</u> their claims.  Trief Decl., ¶ 34.  Each of the 557 Plaintiffs will receive an award of approximately $2,700 on average, exclusive of any additional Enhancement Awards they may be entitled to.  Trief Decl., ¶ 31(a)(iii).[15]  Considering the risk faced by Plaintiffs if litigation continues—including decertification or a finding that they are exempt from overtime compensation requirements—the settlement provides a substantial and beneficial recovery for the collective class.

In addition to, and consistent with, the above, "the reaction of the class to the settlement" (i.e. the second *Girsh* factor) strongly supports approval. All 18 of the Named Plaintiffs approved the settlement and signed the Settlement Agreement within 24 hours of receiving it.  Trief Decl., ¶ 48.  Further, none of the opt-in Plaintiffs—all of whom have been provided with a copy of the Settlement Agreement—have voiced any objection to it (Trief Decl., ¶ 51), thus demonstrating an overwhelmingly favorable reaction by the members of the collective.[16]

---

[15] In the context of other FLSA collective actions, courts have praised awards that achieve far less for their collective members.  *See Hegab v. Family Dollar Stores Inc.*, 11 Civ. 01206 (D.N.J.) (recovering approximately $2,064 per participant, a result the court noted weighed "overwhelmingly weigh[ed] in favor of approval"); *Nash v. CVS Caremark Corp.*, 9 Civ. 79 (D.R.I.) (recovering $1,760 per participant, a result the court termed "magnificent"); *Craig v. Rite Aid Corp.*, 2013 WL 84928, at *10-11 (M.D. Pa. Jan. 7, 2013) (recovering $1,845 per participant).

[16] As to the seventh *Girsh* Factor, a "defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair." *Castagna v. Madison Square Garden, L.P.*, 2011 WL 2208614, at *7 (E.D.N.Y. June 12, 2013) (citations omitted). Accordingly, this factor does not preclude the Court from approving the settlement.

### 3.     The Settlement Does Not Frustrate the FLSA

The settlement does not frustrate the implementation of the FLSA because the release and publicity provisions in the Settlement Agreement are properly limited.  First, the release is sufficiently tailored to the wage-hour claims that were or could have been asserted in the litigation. *Kutz v. Cargill Cocoa & Chocolate, Inc.*, 2019 WL 5457776, at *8 (M.D. Penn. Oct. 23, 2019) (approving release "limited to the release and discharge of claims asserted in the lawsuit or claims that could have been asserted in the lawsuit"); *Cruz v. JMC Holdings, Ltd.*, 2019 WL 4745284, at *7 (D.N.J. Sept. 30, 2019) (approving proposed release in collective action that was limited to claims asserted by and on behalf of the plaintiff under FLSA and NJWHL, i.e., those related to the specific litigation).

The Settlement Agreement also does not contain a traditional confidentiality provision. *See In re Chickie's*, 2014 WL 911718, at *3.  Rather, the Settlement Agreement only precludes Plaintiffs' Counsel from certain publicity regarding the lawsuit and settlement.  Third Circuit courts have approved publicity clauses like in paragraph 8 of the Settlement Agreement.  *Id.* at *3 (approving publicity clause that "only prohibits Plaintiffs from disparaging Defendants or discussing the substance and negotiations of this matter with the press and media"); *Ogunlana v. Atlantic Diagnostic Laboratories LLC*, 2020 WL 1531846, at *5 (E.D. Penn. March 31, 2020).

### 4.     The Enhancements Should Be Approved as Fair and Reasonable

Plaintiffs request Enhancements of $96,000 total to particular "Enhancement Plaintiffs," including $4,000 to each of the 18 Named Plaintiffs, $250 to each of the Plaintiffs designated to participate in discovery, and $500 to each of the 21 Plaintiffs who was deposed.[17]  Those payments are intended to, and do, recognize the additional services which those plaintiffs provided to benefit

---

[17] *See* Ex. 1 (Settlement Agreement), at ¶5.a.

the collective as a whole.  *See* Trief Decl., ¶ 31(b).  Moreover, the Enhancements represent just 1.9% of the total settlement.  Third Circuit district courts routinely approve enhancement or service awards greater than the awards requested here. *See, e.g.*, *Mejia v. KVK-Tech, Inc.*, 2020 WL 5292074 at \*10-11 (E.D. Pa. Sept. 4, 2020) (approving service award of $5,000); *Kapolka v Anchor Drilling Fluids USA, LLC*, 2019 WL 5394751, at \*13 (W.D. Pa. Oct. 22, 2019) (collecting cases from district courts within the Third Circuit and noting service awards ranging from $5,000 to $12,500); *Moore v. Comcast Corp*., 2011 WL 238821, at \*6 (E.D. Pa. Jan. 24, 2011) (approving an incentive award in the amount of $10,000).

Enhancement awards compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation and the risks incurred by becoming a litigant. *See Sullivan v. DB Investments, Inc*., 667 F.3d 273, 333 n. 65 (3d Cir. 2011) ("The purpose of [service] payments is to compensate named plaintiffs for the services they provided and the risks they incurred during the course of class action litigation, and to reward the public service of contributing to the enforcement of mandatory laws."); *see also Kapolka,* 2019 WL 5394751, at \*13 (service awards "reward the public service of contributing to the enforcement of mandatory laws").

Here, Plaintiffs who will receive an Enhancement undertook substantial reputational and personal risks. *See Singleton v. Domino's Pizza, LLC*, 976 F. Supp. 2d 665, 691 (D. Md. 2013) (named plaintiffs risk future employers learning they filed a class action lawsuit against their prior employer); *Alvarez v. BI Inc*., 2020 U.S. Dist. LEXIS 60656, at \*17 (E.D. Pa. Apr. 6, 2020) (named plaintiffs take significant risk by representing the interests of their fellow employees).  The Enhancement Plaintiffs also provided information supporting their claims and the claims of the Collective Members to Plaintiffs' Counsel, submitted declarations in support of their claims, and/or sat for depositions and responded to written discovery requests.  Trief Decl., ¶ 31(b).  Courts

in this Circuit have approved service/enhancement awards for similar activities. *See, e.g., Fein v. Ditech Fin., LLC*, 2017 WL 4284116, at \*11 (E.D. Pa. Sept. 27, 2017) (awarding service payments where the plaintiffs "provided documents to class counsel, provided information concerning their experiences and Defendant's practices, supplied testimony and documents critical to investigation of the Class Members' claims, and made themselves available for the mediation").

### 5. The Court Should Approve the Payment of Attorneys' Fees and Expenses as Just and Reasonable

The FLSA requires courts to award "a reasonable attorney's fee . . . and costs of the action." 29 U.S.C. § 216(b).  In FLSA cases, while both the "lodestar" formula and the percentage-of-recovery method have been used in evaluating the reasonableness of attorneys' fees, in fee shifting cases such as this, the lodestar is the proper method. *See Gelis v. BMW of N. Am., LLC*, Slip Op. at __, 12, 2022 WL 4113673, __ F.4th __ (3d Cir. Sept. 9, 2022); *Loughner v. Univ. of Pittsburgh,* 260 F.3d 173, 177 (3d Cir. 2001) (affirming that using "lodestar" formula is appropriate); *see also Souryavong v. Lackwawanna Cty.*, 872 F.3d 122 (3d Cir. 2017) (affirming district court's detailed lodestar analysis of requested attorney's fees); *Karali v. Branch Banking & Trust Co.*, 2020 WL 7227204, at \*2 (D.N.J. Feb. 3, 2020) (approving FLSA collective action settlement and noting that "settlements involving fee-shifting statutes without a common fund, such as this one, the Third Circuit prefers the lodestar method"); *Stickel v. SMP Svcs, LLC*, 2016 WL 827126, at \*4 (M.D. Pa. Mar. 1, 2016) (discussing that statutory fee-shifting approach of FLSA suggests lodestar approach) (citing *Lyle v. Food Lion, Inc.*, 954 F.2d 984, 989 n.2 (4th Cir. 1992); *Silva v. Miller*, 307 F. App'x 349, 351-52 (11th Cir. 2009)).  As the Third Circuit explained in *In re General Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768 (3d Cir. 1996):

> Courts generally regard the lodestar method . . . as the appropriate method in statutory fee shifting cases.  Because the lodestar award is de-coupled from the class

> recovery, the lodestar assures counsel undertaking socially beneficial litigation (as legislatively identified by the statutory fee shifting provision) an adequate fee irrespective of the monetary value of the final relief achieved for the class.

55 F.3d at 821.

To determine what is reasonable under the lodestar method "requires multiplying the number of hours reasonably expended by a reasonable hourly rate." *Loughner,* 260 F.3d at 177.

Here, Plaintiffs' Counsel's requested attorneys' fee award of $3,400,000, including $415,273.79 in expenses, for a net fee of $2,984,726.21 to be paid by Defendant, complies with the lodestar method approved by Third Circuit courts. Specifically, Plaintiffs' Counsel has, among the four firms, recorded a lodestar valued at $4,618,206.00, as of August 31, 2022 (and continuing to accrue). *See* Trief Decl., ¶ 60. The net fee after of $2,984,726.21 represents a discount of more than $1.6 million, yielding a lodestar multiplier of 0.65. *Id.* at ¶ 61. A multiplier of less than one confirms the reasonableness of the award. *See Karali*, 2020 WL 7227204, at *2 (approving fee awarded on lodestar basis, yielding multiplier of 0.439, noting this ratio "weighs in favor of approval"); *see also Alvarez v. BI Inc.*, 2020 WL 1694294, at * 8 (E.D. Pa. Apr. 6, 2020) (with lodestar crosscheck, noting that multiplier of 0.58 confirms requested award is fair and reasonable); *Waltz v. Aveda Trans. And Energy Svcs, Inc.*, 2017 WL 2907217, at *5 (M.D. Pa. Jul. 7, 2017) (using lodestar cross-check, finding multiplier of 0.54 justifies award).[18]

In terms of the nature and amount of work performed, the Court is invited, respectfully, to paragraphs 52-54 of the Trief Declaration. The result bespeaks the quality of counsels' work in this hard-fought litigation, and, of course, this Court, which closely supervised the proceedings

---

[18] The fact that the multiplier here is a fraction of the actual lodestar billed distinguishes this case from *Gelis v. BMW*, 2022 WL 4113673, where class counsel sought an increase above the lodestar. More importantly, here, Defenders does not challenge the propriety of the requested fee, nor have any Plaintiffs opposed the request, in contrast to *Gelis*, where, the defendant appealed the district court's fee determination.

ranging from discovery disputes to motions for final certification and *Daubert* motions is able to assess for itself the quality and extent of Counsel's efforts as well.

Finally, Plaintiffs' Counsel's requested fee award includes reimbursement of their out-of-pocket costs and expenses in the amount of $415,273.79, including filing fees, expert witness fees, travel expenses, and other fees and expenses. Trief Decl. ¶¶ 57, 60. Courts in the Third Circuit routinely approve reimbursement of such costs and expenses. *See, e.g. Keller v. TD Bank, N.A.*, 2014 WL 5591033, at *16 (E.D. Penn. Nov. 4, 2014) (approving complaint filing and mediation costs); *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001) (approving costs for photocopies, telephone and fax charges, postage and express mail charges, and legal research).

## V. <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs and Defenders respectfully request that the Court grant their Motion for Approval and enter an Order (1) granting approval of the Settlement Agreement as fair, reasonable, and adequate; (2) approving the payment of Enhancement Awards as set forth in the Settlement Agreement; (3) awarding Plaintiffs' Counsel their requested attorneys' fees and expenses as set forth in the Settlement Agreement; and (4) dismissing the case with prejudice.

Dated:  September 15, 2022                    Respectfully submitted,

/s/  *Herbert W. Mondros*
Herbert W. Mondros
300 Delaware Avenue, Suite 210
Wilmington, DE 19801
Telephone: (302) 295-5310
Facsimile: (302) 654-7530
hwm@rl-legal.com

Ted E. Trief (*Pro Hac Vice*)
Shelly L. Friedland (*Pro Hac Vice*)
Eyal Dror (*Pro Hac Vice*)
TRIEF & OLK
750 Third Ave., Suite 2902

17

New York, NY 10017
Telephone: (212) 308-2769
ttrief@triefandolk.com

Peter S. Pearlman (*Pro Hac Vice*)
COHN LIFLAND PEARLMAN
HERRMANN & KNOPF LLP
Park 80 Plaza West One
250 Pehle Avenue, Suite 401
Saddle Brook, NJ 07663
Telephone: (201) 845-9600
psp@njlawfirm.com

Macy D. Hanson (*Pro Hac Vice*)
THE LAW OFFICE OF
MACY D. HANSON, PLLC
The Echelon Center
102 First Choice Drive
Madison, MS 39110
Telephone: (601) 853-9521
macy@macyhanson.com

***COUNSEL FOR PLAINTIFFS***

*/s/  J. Cory Falgowski*
J. Cory Falgowski (No. 4546)
Burr & Forman LLP
1201 N. Market Street, Suite 1407
Wilmington, DE  19801
Telephone: (302) 830-2310
Facsimile:  (302) 397-2025
jfalgowski@burr.com

K. Bryance Metheny *(Pro Hac Vice)*
Ronald W. Flowers, Jr. *(Pro Hac Vice)*
Martin J. Burke *(Pro Hac Vice)*
H. Carlton Hilson *(Pro Hac Vice)*
420 N. 20th Street, Suite 3400
Birmingham, Alabama 35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
bmetheny@burr.com
rflowers@burr.com
chilson@burr.com

***COUNSEL FOR DEFENDANT***

18

49025746 v1